**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X
                                                                      :
AMANDA Z. KOGER, and                                                  :
MEGAN E. KOGER,                                                       :
                                              **Plaintiffs**          :
                                                                      :        **13 CIV. 7969 (PAE)**
                                                                      :        JURY
                              -v-                                     :        DEMAND
                                                                      :
STATE OF NEW YORK, BRONX COUNTY FAMILY COURT                          :
JUSTICES; JUSTICE MAUREEN A. McLEOD,  JUSTICE  GAYLE  P.              :
ROBERTS, JUSTICE CLARK V. RICHARDSON, each one in their              :
official and individual capacity,                                    :
LEGAL AID SOCIETY OF NEW YORK; law guardian, VICKI LIGHT,            :
In her official and individual capacity,                             :
CITY OF NEW YORK, ADMINISTRATION FOR CHILDREN'S                       :        **FIRST AMENDED COMPLAINT**
SERVICES; (ACS) caseworker DARLENE  JACKSON, in her                  :
Official and individual capacity, NEW YORK CITY CORPORATION           :
COUNSEL; SPECIAL ASSISTANT, LE LANI HINES, in her official           :
 and individual capacity, BRONX COUNTY FAMILY COURT;                 :
 LEGAL COUNSEL FOR ACS, JENNIFER LEVINE, in her official             :
and individual capacity,                                             :
                                              **Defendants**          :
------------------------------------------------------------------------X

Come the Plaintiffs, and for cause of actions, state as follows:

### I.        INTRODUCTION

This action arises under the Fourth, Fifth and Fourteenth Amendment of the United States

Constitution; under federal law, specifically, 42 U.S. C. €1983 and l988; under New York State statute

Article 15.20 Part 1 Title B €, and under Restatement of the Law, Second, Torts, €328D for negligence,

intentional  infliction of emotional distress, loss of consortium, unlawful detention, fraud, negligent

supervision, civil conspiracy and the failure to provide adequate education to minors while being

unlawfully detained.

While the individual Defendants were acting in the scope of their employment and under color

of state law, they removed the Plaintiffs from a courthouse interrogation room while waiting for our

parents, who were in a courtroom proceeding, and placed us in foster care for a period of 12 days. We

initially were taken to the Bronx County Family courthouse from our home in Bronx, New York two

weeks earlier, by police car, in an unreasonable search and seizure by four New York City Police officers,

on an order by Defendant Justice McLeod, even though subject matter or personal matter was never invoked. Two weeks later, we accompanied our parents to court for a second appearance, where neither of us was given an opportunity to be heard. The second proceeding resulted in us, the minor Plaintiffs being whisked away from our parents and placed in foster care without knowing or understanding how or why. Justice Maureen A. McLeod, the presiding judge, had to recuse herself from the matter after the foster care placement, because she deprived our parents and us of civil liberties, a right to be heard. She had a prior history of depriving families of these same rights, and refused to consider evidence to support our homeschool program. The placement into foster care was also done without subject matter or personal jurisdiction over us, and no reasonable judge would have thought jurisdiction proper, because the petitioning (ACS) caseworker never filed the petitions through the office of the Bronx County Family Court clerk. The placement showed a callous disregard for our constitutional rights.

The improperly trained and supervised Defendants' actions caused us permanent personal injury, and physical, mental and emotional distress that plagues us to the present. We were separated from our home, parents, and our state approved homeschool program for 12 days. We didn't attend school during the unlawful placement in two different foster care homes for 10 of those days, and went without education of any kind for the entire time. We remain traumatized as a result of these events from then until now. We have nightmares, anger and abandonment issues and an inability to go about our lives in a normal way. Our educational ventures and personal relationships with family and friends have been hindered. We still grapple with fear of failure to perform and achieve, and struggle daily with feelings of inadequacy.

We had to receive counseling and see psychiatrists over the years to get through our secondary schooling, as a direct result of the harm done to us by the lack of good faith and reasonableness the Defendants subjected us to. There was no cause, evidence or justifiable reason for foster care placement. The two defective educational neglect petitions were never filed thru the office of the Bronx County Family Court Clerk by the (ACS) caseworker or anyone else. All of the Defendants knew or reasonably should have known both petitions contained the jurisdictional defect.

The Defendants showed a deliberate indifference, and reasonably should have known that subject-matter or personal jurisdiction never attached to the petitions to carry out the wrongful acts committed against us. No Family Court justice ever spoke to, interacted with or even saw us. Each Defendant refused to acknowledge the approved homeschool applications our parents had submitted timely for the authorization to school us at home, signed by District 9 homeschool supervisor, Michael

Carter. We were being assaulted and bullied by fellow students in the public school sector almost daily, but nobody bothered to investigate or monitor that situation. The only focus of the Defendants was on the two jurisdictionally defective petitions never filed in the office of the Bronx County Family Court Clerk. In addition, there was a complete lack of credible evidence to support negligence of any kind.

Action is also brought against the State and City of New York for its failure to properly train and supervise all the Defendants in the custom or usage of their acts with the force of law. None of the Defendants applied the correct methods, manner and techniques to investigate, collect and verify allegations of educational neglect. The defective petitions resulted in the decision to remove us, the minor Plaintiffs from our home, and were presented to the family court judges lacking the proper commencement, pursuant to statute as outlined in the Family Court Act €1012.

We, the plaintiffs, see this as a serious act of misfeasance. The failure to follow established policies, procedures, practices and customs, done without filing or notice, when the want of jurisdiction is known by all the Defendants, is egregious and shocking to the conscious. The conduct can only be deterred by the assessment of substantial financial compensation and punitive damages, not by presenting us with two large expensive teddy bears upon our return to our parents, as the Defendants did.

The Defendants must have known the petitions also weren't noticed upon us by mail, in violation of the State's policy to provide notice, or ever filed in the Clerk's office, which is a customary precedent for jurisdiction to attach by law. The Defendants took advantage of our parents' lack of knowledge in these facts, and intentionally hurt us without justifiable cause. Under these conditions, the veil of absolute, qualified and quasi- qualified immunity is forfeited.

For over two years after these unlawful events, we were intimidated, harassed and intruded upon, both in our home and at school because of the defective petitions. The Defendants perverted the course of justice and an evil intent was exacted upon us, the Plaintiffs. The seven named Defendants knew the petitions remained unfiled the entire time, but still failed to comply with the basic principles of procedural due process, causing us extreme and unnecessary harm.

## II.    JURISDICTION

1.   This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C . €1331, 1332, 1341 and 1343, and venue is properly placed in the U.S. District Court for New York State pursuant to 18 U.S.C. €1001 and 28 U.S.C. €1983.

2.   The cause of actions alleged herein arise from factual events that happened to us in this Judicial District.

3.   On information and belief, it is a fact that each of the named Defendants is a New York State, City or individual employee acting in concert with state and city employees or actors, all under the supervision and control of the State and/or City of New York, for Bronx County, and conspired with the one another as it relates to their official duties and actions.

4.   Plaintiffs reside outside of the state of New York, but were citizens and minors at the time the unlawful acts were committed by the Defendants so named in this complaint.

5.   The amount in controversy is in excess of $75,000.00.

### III.        PARTIES

A.

6.   The Plaintiffs, AMANDA Z. KOGER and MEGAN E. KOGER, are currently citizens and residents of Chicago, Illinois, and both were minors at the time of the incidents described herein, living in Bronx, New York.

B.    7.   The Defendant Justices, Clark V. Richardson, a chief supervising judge, Maureen A. McLeod, a family court judge, and Gayle P. Roberts, a family court judge was/is each a resident of the State of New York, employed by the State of New York, and at all times material to the facts in this complaint, a Bronx County Family Court Justice, acting in his/her official capacity, under color of state law.

8.   The Defendant, Vicki Light, was/is a resident of the State of New York, and a law guardian employed by/through the Legal Aid Society of New York State as an independent actor, appointed by Judge Maureen A. McLeod, and at all times material to the facts in this complaint, was an independent actor appointed by Justice McLeod,  working in concert with her and the other two justices in this complaint at the Bronx County Family Court, and with the Administration for Children's Services (ACS) agency for the City of New York, in her official capacity, under color of state law.

9.   The Defendants, Jennifer Levine is/was a resident of the State of New York, as legal counsel for the (ACS) caseworker, employed by Corporation Council for the City of New York.  At all times material to the facts of this complaint, she was acting in her official capacity, under color of state law. LeLani Hines was/is a resident of the State of New York, as special assistant attorney to Corporation Council for the City of New York, employed by the Bronx County Family Court to assist the legal counsel

for (ACS). At all times material to the facts of this complaint, she was acting in her official capacity, under color of state law.

10.      The Defendant, Darlene Jackson was/is a resident of the State of New York and is the improperly trained petitioning (ACS) caseworker, employed by the City of New York's (ACS) agency. At all times material to the facts in this complaint, she was acting in her official capacity, under color of state law.

IV.      **THE FACTS.**

11.      On or about December 20th, 2002, (ACS) caseworker, Darlene Jackson, presented Justice Maureen A. McLeod, a Bronx County Family Court judge, with two unfiled petitions alleging educational neglect on inaccurate information from an unreliable source. Despite not having presented the petitions to the clerk of the Bronx County Family Court first, for subject matter jurisdiction to attach lawfully, Justice McLeod directed the New York City police department to go to our home and execute an unreasonable search and seizure to bring us to the courthouse. We were detained in an interrogation room and questioned about our home life and why we weren't in school by Defendants Darlene Jackson and Vicki Light. Our parents were in a proceeding with Justice McLeod, and didn't know that we were being interrogated, on petitions that never jurisdictionally attached. Two hours later, we were returned to our parents. We all went home believing our parents had resolved the matter.

12.      Our parents said the judge brought us all to court, (in separate police cars) due to a misunderstanding about our homeschool. Two weeks later we went back with our parents to the Bronx County Family Courthouse to again be interrogated about home, family and school.  After about an hour, we were whisked out of a room, past our mother, and out a back entrance into a waiting car. We cried and screamed for our mother, but they wouldn't let her near us. We were told that we were going to be placed in foster care because our parents were refusing to cooperate with the judge.

13.      The remainder of that day was spent in confusion and fear. The following day we were taken to the Catholic Children's Charities agency, and told they were going to find us a home to stay in. There was no interaction with the judge. We were afraid and traumatized by being taken away so abruptly. When we asked why we couldn't go home, we were told that we were being impaired by our parents' failure to send us to school, and were in imminent danger of being neglected.

14.      For the next 10 days, we were shifted between two foster care family homes and weren't allowed to have any contact with our parents. We didn't attend school of any kind and received no educational instruction at either foster home. We were subject to negligent and indifferent care and

treatment. We were bitten and scratched by cats and other foster care children in the second home. We were forced to eat unfamiliar foods from unclean utensils and dishes that caused our face and mouths to break out.

15.     We were given improperly sized, worn out, faded clothing and shoes that fit poorly. The foster mothers put products in our hair and on our skin that caused us hair loss and allergic reactions. We went to sleep and woke up crying. We both shut down verbally and psychologically. We consider ourselves blessed that we weren't physically abused or molested by people we didn't know. The Defendants put us in imminent danger and failed to provide a proper education for the entire duration of the illegal placement. The entire matter is res ipsa loquitur. An obstruction of justice occurred by those appointed and hired to preserve and execute the law.

16.     We were returned to our parents 11 days later at the Catholic Charities Center, sad and despondent from being told our parents weren't looking for us and didn't want us back. We were afraid to sleep or be away from our parents for any reason. We had recurring nightmares of being taken away again, and were in need of medical and psychiatric attention for months thereafter. We continue to need counseling to this day. Plaintiff Amanda contracted scarlet fever from the experience, and Plaintiff Megan came down with mononucleosis when the summer began. Our respective medical histories over the past 10 years will support these facts.

17.     Justice McLeod placed us in foster care and closed out homeschool. She also ordered our parents re-enroll us in the same school we were withdrawn from, to re-face the original insults, bullying and physical injury. We faced ridicule from fellow students because we looked abused and neglected from the foster care experience. We had no friends to talk to, and felt ashamed and embarrassed to let anyone know what we'd been through during our unreasonable and unlawful detention and imprisonment, on petitions where jurisdiction never attached over us as the subject of those defective petitions, or over us as the persons of those defective petitions.

18.     Justice Maureen McLeod hastily and wrongfully threw us into foster care because of her racial intolerance, in retaliation against our parents because they stood up to her and challenged her authority in the matter from the start. As often as petitions come before all of the named Defendants in their official duties, she and each one of them must have known the petitions were given to her without jurisdiction; that she was acting outside of her judicial capacity in the clear absence of any jurisdiction. Her objectivity and haste was designed solely to hurt our parents because she believed herself to be immune from any and all repercussion, no matter what action she took.

19.     She used her power on the bench to hurt us. All three justices should be removed from the bench and stripped of any authority whatsoever. Their conduct shows a complete disregard for the law, and we are anxious to expose these facts at trial. If this was done to us, maybe they've done the same thing to thousands of others with a total lack of conscious.

20.     Although Justice McLeod recused herself for her initial wrongful acts, Justice Clark V. Richardson, on unfiled jurisdictionally defective petitions and inaccurate information that couldnt support the allegations on the defective petitions, passed "the case" along to Justice Gayle P. Roberts, as if jurisdiction was lawfully attached and complete, and for the two years that followed, under her judgeship, we were monitored by the improperly trained (ACS) caseworker. Nobody ever investigated the things we told them about the problems in the public school we'd been withdrawn from.

21.     The homeschool program our parents had applied for was approved and functioning, well in advance of the drafting of the flawed jurisdictionally deficient petitions. When Judge McLeod had to recuse herself from the case, it should have been dismissed.  But racial indifference fueled the whole mess, and fueled the continuance. The deprivation of our civil rights was recklessly and needlessly infringed upon us without true cause. The Defendants intruded upon our right to liberty, privacy, education and the continuous family connection.

22.     The law guardian, Vicki Light, was appointed by Judge McLeod, without jurisdiction to make the appointment. She didn't have our best interests at heart. She was acting on behalf of Justice McLeod, and tried to get us to say our parents weren't schooling us at home, but were neglecting or mistreating us. She acted in concert and conspiracy with Justice McLeod to place us in foster care, and conspired with Justice Roberts to inflict an unconstitutional injury upon us. Even though she too reasonably should have known jurisdiction hadn't attached, she also acted in concert with Justice Roberts, by recommending that we be psychiatrically evaluated.

23.     On incorrect, unverified and uninvestigated information, she also made no effort to keep us in our home, yet displayed a fake concern for our well-being on the jurisdictionally defective petitions.

24.      At times, in the two+ years of agency monitoring, Darlene Jackson of the (ACS) agency, came to our residence with a second caseworker, as if we really were neglected in some way, and inserted a derogatory yellow "case disposition" sheet in our educational files on the advice and signature of her legal counsel with no foreseeable disposition in sight, on petitions that contained non-factual information she never investigated or obtained evidence of, and upon which jurisdiction never invoked for the justices to take authority upon. Darlene Jackson and LeLani Hines also knew Judge

McLeod was going to place us in foster care while they were interrogating us and did nothing to try to keep the family unit intact. They informed our parents' counsel of that fact before the proceeding illegally placing us in foster care began.  When we were returned 11 days later, they presented us with large expensive teddy bears, as if to make a mockery of their wrongful acts.

25.     Paragraphs 1 thru 24 are referenced, incorporated, and re-alleged.

III.                    **THE COUNTS.**

**COUNT I.**

Defendant Justice McLeod on or about December 20th, 2002, dispatched New York City police to our residence in Bronx, N.Y. to perform an illegal search and seizure of our home and persons without a search warrant, and had us brought to court in a police car, in violation of our right to be free from unreasonable search and seizure, pursuant to the Fourth Amendment of the U.S. Constitution on two Educational neglect petitions where jurisdiction had not attached, under color of law, and she had reason to know that fact.

1(a).     This count applies to conduct exhibited against Amanda Z. Koger.

1(b).     This count applies to conduct exhibited against Megan E, Koger.

**COUNT II.**

Defendant Justice McLeod instructed the absentia Law Guardian and the ACS caseworker to interrogate us about our home, family and educational life without our parent's knowledge or consent. The incident Is equivalent to an unnecessary, unlawful detention of minors when no actual imminent danger was present under color of law. Our parents didn't know where we were or what was being asked or said. Since the petitions weren't jurisdictionally attached, it is a violation of our 5th Amendment rights. We were deprived of our civil liberty and had the right to not be questioned without representation as minors.

2(a).     This count applies to conduct exhibited against Amanda Z. Koger.

2(b).     This count applies to conduct exhibited against Megan E. Koger.

**COUNT III.**

Defendant Justice McLeod had us interrogated a second time on or about January 11th, 2003. But this time, at a second appearance by our parents, we were whisked away from our mother, taken out a back entrance and put in a car to be taken to the Catholic Charities Agency. For 12 days thereafter, we were illegally imprisoned and attended NO SCHOOL.  For want of jurisdiction, the conduct exhibited was done

under color of law. A Family Court Judge can't close a homeschool program because it is a declartory judgment, and pursuant to Education Law 100.1. These acts violate and pervert the course of justice under the 4th Amendment and 42 USC €1983. Our 12 day absence controverts defective petitions even with Jurisdiction, but without it, we were deprived of the right to be free and educated. Jurisdiction was clearly absent and all of the Defendants had reason to know of it. Law and the Family €1:23

    3(a).    This count applies to conduct exhibited against Amanda Z. Koger.

    3(b).    This count applies to conduct exhibited against Megan E. Koger.

    **COUNT IV.**

Defendant Justice Clark V. Richardson took the jurisdictionally defective petitions after Justice McLeod had to recuse herself due to judicial misconduct, and furthered the miscarriage of justice by leaving us in foster care and setting the case for "trial" without facts to support the placement. Under color of law, he decided that we were in imminent danger, but he should have reversed whatever order was used to put us in harm's way. He instead passed the matter to Justice Gayle P. Roberts for a trial.

He too, deprived us of the right to be free from unlawful detention and imprisonment without facts or jurisdiction under 42 USC €1983.

    4(a).    This count applies to conduct exhibited against Amanda Z. Koger.

    4(b).    This count applies to conduct exhibited against Megan E. Koger.

    **COUNT V.**

Defendant Clark V. Richardson is guilty of JUDICIAL misfeasance. He ultimately adjudicated us as educationally negligent, which is also in error. No one noticed the customary usage of the clerk's stamp must FIRST be put onto petitions. It is there to enact the force of law needed for the court to take authority over the subject and persons. It seems every Defendant was all too willing to overlook this fact. 18 USC €1001 should apply, because no jurisdiction attached. The veil of immunity of any kind is shredded to bits here. The conduct exhibited was a deliberate abuse of his discretion, done in bad faith and malicious. We are again deprived of civil liberty and the right to be free from unreasonable seizure. 42 USC €1983 and 1985,  71 ALRd 498

    5(a).    This count applies to conduct exhibited against Amanda Z. Koger.

    5(b).    This count applies to conduct exhibited against Megan E. Koger.

    **COUNT VI.**

Defendant Vicki Light, the absentia law Guardian, didn't represent us in any way. From the start of the jurisdictionally defective petitions, she made it clear to us that she worked for the Judge. Her recommendation to Justices McLeod was for us to go to foster care. She had a meeting of the minds

with the judge, not us. She conspired and met secretly with Justice McLeod on multiple occasions and later with Justice Roberts, suggesting we remain in foster care and said we needed to be evaluated psychologically. But the petitions never enacted the force of law for her or anyone else to speak to or about us at all. This case contains the procedural stamp saying the court, date, time and district it was filed in. The stamp giving the court or any judge jurisdiction doesn't appear on the defective educational neglect petitions. This violates the procedural element necessary to commence the action, and deprives us of our civil rights. Yet these Defendants rely fully upon absolute, qualified and quasi- qualified immunity. The law says that in the clear absence of jurisdiction, no immunity exists. 42 USC €1983, NY Code Section 105.10, F.C.A Part 3 Article 10, F.C.A. €1024, Social Services Law €417(a),

      6(a)    This count applies to conduct exhibited against Amanda Z. Koger.

      6(b)    This count applies to conduct exhibited against Megan E. Koger.

**COUNT VII.**

Defendant Justice Gayle P. Roberts ordered us to continuous home monitoring after we were given back to our parents. She displayed a deliberate indifference and never saw or spoke to us.  The evidence didn't support the need for home monitoring. The justice breached her duty to act in accordance with the Family Court Act. There was no "smoking gun" and the continued home visits were a source of emotional injury and infringed our civil rights .We felt criminalized by the visits. We told the ACS caseworker school for us was a place of assault and constant bullying. Our learning was being disrupted. But the focus on the defective petitions was the only consideration of Bronx Family Court justices and the other named Defendants.   Powers and Procedures of Family Court. €1:13, 71 ALR3d 498.

      7(a)    This count applies to conduct exhibited against Amanda Z. Koger.

      7(b)    This count applies to conduct exhibited against Megan E. Koger.

**COUNT VIII.**

Defendant Jennifer Levine was of counsel to the ACS caseworker, and failed to properly train, supervise and advise the caseworker on the correct manner in which to commence petitions, or how to collect evidence before having a court of law intervene in the life of a child. She did nothing to keep us from being placed in foster care, on defective petitions and caused our injury and emotional distress, because we couldn't figure out what we'd done wrong. She encouraged and signed off on a yellow derogatory disposition sheet that got inserted in our educational files by the petitioning caseworker before any outcome in the jurisdictionally defective case was determined. 42 USC €1983 .

      8(a).    This count applies to conduct exhibited against Amanda Z. Koger.

      8(b).    This count applies to conduct exhibited against Megan E. Koger.

**COUNT IX**

Defendant LeLani Hines was of counsel for the city to both the city attorney for (ACS) and to the improperly trained petitioning case worker, who gave defective petitions to Justice McLeod. Her duty was to ask for a dismissal, because the caseworker never filed the petitions and was operating on speculation without proof of educational neglect. She had a duty and the power to prevent the Court from needlessly taking us. She was to convince the Judges to reach a different conclusion because she had reason to know of the defect on the petitions . Instead she "egged her charges on" in the deprivation of our rights, under color of law and seemed to enjoy the fact that we got taken. She likewise had a duty to tell the caseworker the petitions needed to first be filed with the clerk of the Bronx County Family Court.  42 USC €1983, Family Court Act €216-c(c), 42 USC €1983.

      9(a)     This count applies to conduct exhibited against Amanda Z. Koger.

      9(b)     This count applies to conduct exhibited against Megan E. Koger.

**COUNT X**

Defendant Darlene Jackson is the improperly trained petitioning (ACS) caseworker who started  the matter in error. She was working with half-truths and incorrect information from a school official that had it in for our parents, when she failed to file the petitions and just gave them to the judge.

She incorrectly investigated the matter and didn't follow procedures as outlined in the Family Court Act on how to commence an action at law.

She also violated her own agency's procedures by bringing a co-worker with her on a couple of visits to our home. She further violated us by inserting two derogatory dispositional yellow sheets into our educational files before any case determination was made.  Child Protection Proceedings €9:5, New York Family Court Act €1034(1).

      10(a).   This count applies to conduct exhibited against Amanda Z. Koger.

      10(b).   This count applies to conduct exhibited against Megan E. Koger.

WHEREFORE, the Plaintiffs, AMANDA Z. KOGER and MEGAN E. KOGER, respectfully request

This court grant equitable restitution and punitive damages in the amount of $70,000,000.00

[SEVENTY MILLON DOLLARS], and such other and further relief as the Court deems just and proper.


PLAINTIFFS, pro se,


AMANDA Z. KOGER

MEGAN E. KOGER

7624 S. Damen Ave
Chicago Illinois  60620

Amanda Z. Koger

Megan E. Koger

Dated: March 30, 2014
Chicago, Illinois



**COMMUNITY SCHOOL DISTRICT SEVEN**
THE CITY OF NEW YORK DEPARTMENT OF EDUCATION

MYRTA RIVERA, *Superintendent*
BERNICE MORO-REYES, Ph.D., *Deputy Superintendent*
ELVIRA BARONE, *Assistant Superintendent*

**Community School Board President**
HON. RICHARD IZQUIERDO

January 17, 2003.

Bronx Family Court
Sheridan Ave. Bronx, N.Y.

To whom it may concern:

Amanda Koger – 8 /29 /92
Elizabeth Koger – 8 / 15 / 95

Mr. Frederick Koger and Mrs. Rosyln Drew, parents of the above referenced students provided Home schooling services during the school year 2001 – 2002. Parents submitted the required letter of intention and the Individualized Home Instruction Plan according to Commissioner's regulation 100.0. As part of the required documentation they also submitted on time their children 1ˢᵗ and 2ⁿᵈ quarterly report. The parents also met the assessment requirements for the past school year.

Our records indicate that the family moved on May 2002, whereabouts unknown, for which we did not receive the last report.

Mr. Koger will submit to us end of the year progress /attendance reports for the students by January 24, 2003 in order to deemed the school year 2001 – 2002 completed.

Please contact us (718 / 292 – 0876) if you need any additional information.

Respectfully,

*Emma Amaro Samuels*

Emma Amaro – Samuels , CSW
CSD # 7 Program Cordinator

Exhibit "A"

FAMILY COURT OF THE STATE OF NEW YORK
CITY OF NEW YORK - COUNTY OF BRONX
UNIFIED TERM - ASSIGNMENT PART 5
- - - - - - - - - - - - - - - - - - - - X

In the Matter of

    AMANDA KOGER
    MEGAN KOGER

Children Under Eighteen Years of
Age Alleged to be Neglected by

    ROSLYN DREW
    FREDERICK KOGER

                  Respondents
- - - - - - - - - - - - - - - - - - - - X

DOCKET NUMBERS
N-21787/02
N-21788/02

900 Sheridan Avenue
Bronx, New York 10451
December 20, 2002

B e f o r e :

    HONORABLE MAUREEN A. MCLEOD

        Judge

A p p e a r a n c e s :

    SPECIAL ASST. CORPORATION COUNSEL;
    BY JACQUELINE SAED, ESQ.
    Standing in for JENNIFER LEVINE, ESQ.
    For the Commissioner

    LEGAL AID SOCIETY
    BY VICKI LIGHT, ESQ.
    Appearing for the Children

P r e s e n t :

    DARLENE JACKSON, Child Protective Specialist,
        for A.C.S.

                   A. Carlton Ajaye
                   Official Court Reporter

Plaintiff's Exhibit B

DEFENDANT'S EXHIBIT

Exhibit "B"
2

Colloquy                                              3

them in, so she has no idea what the home
*condition is like.* She then even tried to get the
mother to bring the children to the office so that
she could see them an interview them and the
mother has refused to do that. As a matter of
fact the worker spoke with the parents. Told them
that we'd be in court today filing the petition.

And what did they say?

MS. JACKSON: The father said we can see them
when he gets the warrant.

MS. SAED: And then I would ask for a date
for warrant control.

THE COURT: Police to use necessary force to
secure the children.

What date do you want to come back?

MS. SAED: I don't know, do you want to put
over for about a week, but hopefully we'll be in
before then when the officers actually execute the
warrant?

THE COURT: Okay. I'm back in intake on the
9th. Do you want to put over until then as a
control date?

MS. SAED: What date, Judge, January 9th?
Yes.

Exhibit C

3

Colloquy                                                    4

THE COURT:  Hopefully I'll see you long

before that.  Do you want a remand as well?

MS. SAED:  No, Judge.  I'm not asking for a

legal status right now.

THE COURT:  Okay.  You've got it.

MS. SAED:  Thank you.

MS. LIGHT:  Thank you.

COURT OFFICER:  Thank you.  Parties are

excused.  Step out, please.

---oOo---

CERTIFIED TO BE A TRUE
AND ACCURATE TRANSCRIPT.

A. Carlton Anaye
Official Court Reporter

Exhibit D

Colloquy                                              5

THE COURT:  Well, she's going to need to come

into court and tell me that.

Now where are the children?

MS. LEVINE:  They're still remaining with the

parents.

THE COURT:  What's going on with them?

MS. LEVINE:  Well, we haven't been granted

access to see the children.  They keep refusing to

allow us to interview them.

THE COURT:  What are you prepared to do about

that?

MS. LEVINE:  We'd like to give them another

chance to see if we can speak to them.

THE COURT:  Why?

MS. LEVINE:  They seem to be complying

somewhat at the moment.

THE COURT:  With what?

MS. LEVINE:  With given them home schooling.

THE COURT:  How do you know that?

MS. LEVINE:  They did send in an intent to

enroll the children in home schooling, as is

required by the education office.

COURT OFFICER:  Ma'am remain standing.

DARLENE JACKSON IS DULY SWORN:

Exhibit E

5

Colloquy                                    7

expecting A.C.S. to make an application tomorrow

should the parents not grant A.C.S. access into

the home.

THE COURT:  And I believe that I told you

folks, and you can get the transcript, that I

wanted the children enrolled in school.  I was not

interested in their intent to do much of anything.

I wanted the children in school.  I wanted other

sets of eyes on this family.  I thought I was real

explicit, and I thought I was real explicit about

remanding the children if there wasn't compliance.

So I don't know why A.C.S. is sitting back and

sort of taking a passive view on it.

MS. LIGHT:  Judge, I think you said that if

there was an approved home schooling.

THE COURT:  No, that's not what I said.

MS. EGAN:  That's what Miss Levine's notes

reflect also, Your Honor.

THE COURT:  No, I said I wanted them in

school, and then we could talk about an approved

school plan.  Because they had stated sending some

document off, but I wanted to know what's going

on.  There seemed to be some other issues there.

MS. BENEZEAU:  Your Honor, I realize that the

Exhibit E

6

8

Colloquy

Court is waiting to get some documents from Mr.
Koger as to his financial status.   If I may just
appear essentially for the moment, inform the
Court it's my understanding that Miss Light has
seen and interviewed both of the children.
According to what Mr. Koger has told me, there has
not been any attempt by A.C.S. to come to the home
and see the children since the last court date.

THE COURT:   Well, I really would find that
hard to believe.   Perhaps the caseworker can tell
us about her attempts to contact this family.

MS. JACKSON:   Excuse me, Your Honor, on
December 30th I called the home and asked them to
bring the kids into the office and submit
documents, medical records, home schooling
information, and mom declined and stated that she
had an appointment with the district office on
January 2nd.   On January 2nd -- and on January 3rd
she would come to the office.   I called mom on
January 3rd.   Mom said she met with the district
office person and had the kids discharged from
school on January 2nd.   Mom refused to allow me
into the home.   She told my supervisor that the
children had the flu, and unless I came with

Exhibit G

7

Colloquy                                                    9

penicillin I was not allowed into the home.

    THE COURT:  Well, what does dad have to say
about this?  He's here.

    MS. BENEZEAU:  My client, I'm sorry, Mr.
Koger has told me, Your Honor, that the children
did had the flu at the beginning of the year.  He
has indicated to me that he would make the
children accessible to A.C.S.  Apparently all the
conversations were taking place with the mother.

    THE COURT:  Okay, I want to see everybody
back here tomorrow.

    MS. BENEZEAU:  Well, Your Honor, I'm not here
tomorrow, and I'm not really officially assigned.

    THE COURT:  Okay.  Then we may have someone
else here tomorrow.  Dad may have to appear pro se
tomorrow.

    MR. KOGER:  Your Honor, I have to be at work.
I'm missing two days of work, and I really have to
be at work.

    THE COURT:  Guess what, sir?  If the kids had
been seen, your home had been seen, we wouldn't
have this problem.  So you fix the problem.  Have
your wife here tomorrow.

    MR. KOGER:  Okay, I'll do that.

Exhibit A

8

Colloquy                                                    10

        MS. EGAN:  And, Your Honor, we also ask that

this be clear, that should the caseworker go out

tonight, and the caseworker will go out tonight,

that she be allowed into the home to interview the

children?.

        THE COURT:  Yes.  To see all documents, and

when we revisit the issue if I am not satisfied

these kids will be in school.  See you folks

tomorrow bright and early.

        COURT OFFICER:  Parties are excused.  Please

step out.

        THE COURT:  No excuses.

                    ---oOo---

CERTIFIED TO BE A TRUE
AND ACCURATE TRANSCRIPT.


                        A. Carlton Ajayo
                        Official Court Reporter

*Exhibit I  Plaintiff*

*Exhibit I*

9

Koger/Drew - 12/23/02                                    8

1
2          MR. KOGER:  Well, Your Honor --
3          THE COURT:  Now, listen to me.
4     Listen to me.
5          Based on your income, I can assign
6     you counsel.  You can represent
7     yourself.  There are potential
8     consequences.  Including the loss of
9     your children.
10         If you wish to represent yourself,
11    you can do so.  But if you do so, there
12    is going to be a trial.  You'll be held
13    at the same standards as if you were an
14    attorney, in terms of presenting
15    evidence, presenting witnesses.
16         I suggest, in a matter this
17    serious, that you are represented by
18    counsel.
19         Now, that's your choice.  But it's
20    very difficult for us to get one
21    attorney today.  I will try in the next
22    day to get the second attorney.
23         But I suggest you think long
24    and hard before you reject any
25    attorneys.

Exhibit J

Koger/Drew - 12/23/02                    10

1    First of all, it's inaccurate

2 (inaudible).

3    THE COURT:  I'm sorry, sir, I

4 didn't hear you.

5    MR. KOGER:  We've complied with the

6 Board of Education.  We've complied

7 with the Department of -- with the ACS.

8 We have materials.  We have everything

9 that we need for discovery in our

10 presence to prove that we are in

11 compliance with the State of New York.

12    THE COURT:  Okay.  This is the

13 first order of business.

14    The children are going to be able

15 to go home with you today.  These are

16 the conditions.

17    This lady over here, the case

18 worker, is going to come to your home.

19 She's going to visit the children.

20 Whatever documents you have, whatever

21 papers you have, you're going to show

22 to her.

23    She's going to see the children.

24 She's going to talk with you.  If you

Exhibit K
10

do not let her come to see you, if you

don't let her see the children, if you

don't talk with her, then she will

conclude, as I will conclude, that you

have something to hide.

So, whether you like her, or you

like me, or you like the whole idea of

Family Court, right now, there are

allegations against you.  So it's in

your interest to provide the

information to the case worker and to

the Court.

Now, the conditions of the parole

are these.  When the school year

begins, I believe the next school date

is January 2nd; is that correct?

MS. LIGHT:  I (inaudible), Your

Honor.

THE COURT:  The parents will take

the children to school.  They will be

registered for school.

If there is an approved home

schooling plan approved by the Board of

Ed., ACS reviews it, and the Court

Exhibit L

12

Koger/Drew - 12/23/02                12

finds it acceptable, then we can put

the home schooling in place if there

are no other issues.

MR. KOGER:  Your Honor, I --

THE COURT:  In the meantime, in the

meantime.

Over the holiday, the case worker's

going to come to the home.  She's going

to want to talk with both of you.

MR. KOGER:  Your Honor --

MS. DREW:  Your Honor --

MR. KOGER:  Let me speak.

Your Honor, the children are

withdrawn from the school.  I

withdraw -- I took my kids out of the

school before Thanksgiving, and it's

documented.  The kids are out.  And

when I did that, I told the Board, I

told the person whoever was in charge,

that we will be home schooling.

We've given them all the

requirements that they asked for.

People, we talked to different people

who are involved in the case.  And like

Exhibit M

'13

Koger/Drew - 12/23/02                    13

I said before, we've complied with all

of the necessary requirements.

We already have -- we already have,

Your Honor, we have a Letter of Intent

that we forwarded to --

May I please approach the Bench,

Your Honor?

THE COURT:  No.  I want you to show

all of these documents --

MS. DREW:  Judge, may I?

THE COURT:  No, ma'am, I want you

to be quiet.

You're going to show all of these

documents to ACS.  They're going to

look at them.  If they're comfortable

with them, fine.  If not, on January

2nd, your children are going to be in

school.

MR. KOGER:  Again, Your Honor, I

took them out because of the fact --

due to the fact that my kids have been

abused, they've been in fights.  And

Administration -- As a New York City

Public School teacher, I understand

Exhibit N

14

```
 1               Koger/Drew - 12/23/02              14

 2      what's going on.  That's the reason why

 3      I took my kids out of the school from

 4      the beginning.  They'll fight, and

 5      administration turns their head.

 6           With respect -- with respect to

 7      you Your Honor, respectfully, I cannot,

 8      under any circumstances, and/or

 9      conditions, bring my kids back to that

10      particular school --

11           MS. DREW:  (Inaudible) --

12           THE COURT:  Then I --

13           MR. KOGER:  On grounds based on the

14      reason why I took them out.

15           THE COURT:  Sir, sir, that's why

16      you're going to sit down and talk with

17      the case worker about what's going on.

18      You're going to provide the information

19      to her.

20           MS. DREW:  Your Honor, may I --

21           THE COURT:  One second.

22      Are you a Board of Ed. teacher?

23           MR. KOGER:  Yes, I am, Your Honor.

24           MS. DREW:  Yes.

25           THE COURT:  And what school do you
```

Exhibit 0

15

Koger/Drew - 12/23/02                    15

teach at?

   MR. KOGER:  Manhattan (inaudible)

Academy.  And I work for the United

States Postal Service.

   MS. DREW:  Your Honor, may I

interject something.

   We put the kids in, in

September --

   THE COURT:  Ma'am, I'm going to

interrupt you because you have an

attorney.  I want you to talk with your

attorney first.

   MS. DREW:  But I've already asked

that I represent myself.

   THE COURT:  Ma'am, I want you to

talk with your attorney first.

   Sir, I want you to bring in three

year's tax returns on the adjourn date

to determine your eligibility for

counsel.  And if you do, indeed, work

for the Board of Ed. as a teacher, it

is very important for you -- It is very

important for you to be represented by

counsel.

Exhibit P

16

Koger/Drew - 12/23/02                    16

1
2          Either appointed counsel, or
3    counsel that you choose to bring in on
4    your own.  Because there are
5    consequences for your employment.
6    So, I'm going to --
7          MR. PINZER:  Your Honor.
8          THE COURT:  Yes?
9          MR. PINZER:  Your Honor, Ms. Drew
10   has indicated to me that she has
11   great problems with the case
12   worker.
13        The problem that I heard most
14   recently is the fact that when she was
15   arrested today, the case -- She's
16   telling me the case worker was laughing
17   at her.
18        MR. KOGER:  Yes.  She's irate and
19   rude, Your Honor.
20        MR. PINZER:  (Inaudible) I heard it
21   as well.
22        MS. DREW:  She's very rude.  And
23   she (inaudible) --
24        MR. KOGER:  We would rather be
25   appointed another case worker --

Exhibit Q

17

Koger/Drew - 12/23/02                    17

1

2        MS. DREW:  (Inaudible) and she said

3    (inaudible) --

4        MR. KOGER:  And take her away.

5        COURT OFFICER:  One at a time.

6        MR. PINZER:  Your Honor, I can only

7    say that there appears to be some

8    acrimony between the parties on this

9    matter.  These people were just

10   arrested this morning.  They're very

11   upset about the matter.

12       Perhaps the Administration for

13   Children's Services should consider

14   assigning somebody else on the case

15   that might be able to work better with

16   them.

17       MR. KOGER:  I echo that, Your

18   Honor.

19       THE COURT:  The reason, the reason

20   that a warrant was issued was so that

21   ACS and the Courts could see the

22   children, speak with them, and know

23   what's going on.

24       Case worker and ACS is still going

25   to come to see them.  There's going to

Exhibit R

18

be cooperation.

    If there isn't, then there will merely be another warrant issued, and they will be arrested again.

    MR. KOGER:  Yes, Your Honor, it's just --

    THE COURT:  All right.  I will see everybody back here on January the 9th --

    MR. KOGER:  Your Honor, may I say something?

    THE COURT:  Sir, I will see you --

    MR. KOGER:  I won't be able to, Your Honor, forward -- I won't be able to have all of the documentation with respect to credit returns, at that late time -- I mean, at that time.

    It's --

    THE COURT:  Bring --

    MR. KOGER:  It's impossible.

    THE COURT:  Bring the --

    MR. KOGER:  And in addition, Your Honor --

    THE COURT:  Sir --

Exhibit S
19

Exhibit S  Plaintiff

Koger/Drew - 12/23/02                                    19

1

2          MR. KOGER:  I don't have it --

3          COURT OFFICER:  (Inaudible) to

4     speak.

5          MR. KOGER:  In my possession.

6          THE COURT:  Sir, get it.  It's your

7     responsibility.

8          COURT OFFICER:  Thank you, parties

9     are excused --

10         MR. KOGER:  (Inaudible).

11         COURT OFFICER:  You may step out.

12         THE COURT:  It's not my problem,

13    sir, it's yours.

14         (Whereupon, at this time, the

15    proceeding was adjourned to January

16    9th,  2003.)

17

18

19

20

21              - o0o -

22

23

24

25

Exhibit T - Plaintiff

Exhibit T
20

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013; All rights reserved.

U.S. POSTAGE
PAID
CHICAGO, IL
60690
APR 01 '14
AMOUNT
$19.99
00025804-79

1007

UNITED STATES POSTAL SERVICE

NATIONAL USE

PRIORITY
★ MAIL ★
EXPRESS™

UNITED STATES POSTAL SERVICE®

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

PO ZIP Code   Scheduled Delivery Date (MM/DD/YY)   Postage

Date Accepted (MM/DD/YY)   Scheduled Delivery Time
☐ 10:30 AM  ☐ 3:00 PM
☐ 12 NOON   Insurance Fee   COD Fee

Time Accepted   ☐ AM  ☐ PM   10:30 AM Delivery Fee   Return Receipt Fee

Weight   ☐ Flat Rate   Sunday/Holiday Premium Fee   Live Animal Transportation Fee

lbs.   ozs.   Acceptance Employee Initials   Total Postage & Fees

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY)   Time ☐ AM ☐ PM   Employee Signature

Delivery Attempt (MM/DD/YY)   Time ☐ AM ☐ PM   Employee Signature

LABEL 11-F, JANUARY 2014   PSN 7690-02-000-9996   3-ADDRESSEE COPY

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( )

PAYMENT BY ACCOUNT (if applicable)

**DELIVERY OPTIONS** (Customer Use Only)

☐ SIGNATURE REQUIRED (Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.)

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE ( )

ZIP + 4® (U.S. ADDRESSES ONLY)

■ For pickup or USPS Tracking™, visit USPS.com or call 1-800-222-1811.
■ $100.00 insurance included.

APR 2 2014

*1000 7*

WRITE FIRMLY TO MAKE ALL COPIES LEGIBLE.

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY
★ MAIL ★
EXPRESS™

OUR FASTEST SERVICE IN THE U.S.

EMS

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

EP13F July 2013   OD: 12.5 x 9.5

P S 1 0 0 0 1 0 0 0 0 0 6

♻ This envelope is made from post-consumer waste. Please recycle – again.