UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                    :

AMANDA Z. KOGER, and MEGAN E. KOGER,    :

                                    :

                 Plaintiffs,    :

                                    :         13 Civ. 7969 (PAE)

            -v-                    :

                                    :        OPINION & ORDER

STATE OF NEW YORK, BRONX COUNTY FAMILY   :
COURT JUSTICES; JUSTICE MAUREEN A.      :
McLEOD, JUSTICE GAYLE P. ROBERTS, JUSTICE  :
CLARK V. RICHARDSON, each one in their official :
individual capacity, LEGAL AID SOCIETY OF NEW :
YORK; law guardian, VICKI LIGHT, in her official and :
individual capacity, CITY OF NEW YORK,    :
ADMINISTRATION FOR CHILDREN'S SERVICES  :
(ACS); caseworker DARLENE JACKSON, in her official :
and individual capacity, NEW YORK CITY     :
CORPORATION COUNSEL; SPECIAL ASSISTANT,  :
LE LANI HINES, in her official and individual capacity, :
BRONX COUNTY FAMILY COURT; LEGAL    :
COUNSEL FOR ACS, JENNIFER LEVINE, in her  :
official and individual capacity,           :
                          Defendants.    :
-----------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Amanda Z. Koger ("Amanda") and Megan E. Koger ("Megan") (collectively,

"Plaintiffs"), proceeding *pro se*, bring this suit against the City of New York, the State of New

York, the Bronx County Family Court, Bronx County Family Court Judges Maureen McLeod,

Gayle Roberts, and Clark Richardson, the Legal Aid Society of New York ("Legal Aid"), Legal

Aid law guardian Vicki Light, the City of New York Administration for Children's Services

("ACS"), ACS caseworker Darlene Jackson, New York City Corporation Counsel, Corporation

Counsel for ACS Jennifer Levine, and Corporation Counsel Special Assistant Lelani Hines

(collectively, "Defendants").  In their Amended Complaint, Plaintiffs allege violations of their

constitutional and civil rights pursuant to 42 U.S.C. § 1983 ("§ 1983") and various state law claims, arising out of educational neglect proceedings instituted against Plaintiffs' parents in 2002.  Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the motion is granted.

## I.     Background[1]

### A.     December 2002 Educational Neglect Petitions

On December 20, 2002, ACS caseworker Darlene Jackson ("Jackson") brought two petitions before Bronx County Family Court Judge Maureen McLeod to commence educational neglect proceedings against Roslyn Drew ("Roslyn") and Frederick Koger ("Frederick"), Plaintiffs' parents.  Dkt. 22 ("Toews Decl.") Ex. A (the "December 20 petitions").  At the time, Amanda was age 10, and Megan was age seven.[2]  Dkt. 15 ("Am. Compl.") Ex. A.  The petitions stated that Plaintiffs had missed a significant amount of school, and that their parents had failed to attend required meetings regarding the absences and to follow the correct procedures for home-schooling.  *Id.*  That same day, Judge McLeod issued an arrest warrant for Roslyn.  Toews Decl. Ex. B.  Plaintiffs allege that they were brought to the Bronx County Family Court by New York City police officers, and, while their parents appeared before Judge McLeod, were "detained in an interrogation room and questioned about [their] home life and why [they] weren't

---

[1] The Court's account of the underlying facts in this case is drawn from the Amended Complaint, Dkt. 15, and the declarations in support of defendants' motions to dismiss, Dkt. 10; Dkt. 22.  For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts in the Amended Complaint to be true, drawing all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  The Court also takes judicial notice of certain documents incorporated by reference in the Amended Complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[2] The Court assumes that Exhibit A of the Amended Complaint, a letter signed by an employee of Community School District 7 dated January 17, 2003, refers to plaintiff Megan E. Koger when it lists the birthday of "Elizabeth Koger."

in school" by Jackson and Vicki Light ("Light"), a Legal Aid law guardian.  Am. Compl. ¶ 11.

After two hours, Plaintiffs returned home with their parents.  *Id.*

On January 10, 2003, Judge McLeod entered two orders directing temporary removal of

Plaintiffs from their parents into ACS custody, pending further proceedings with respect to the

December 20 petitions.  Toews Decl. Ex. C; Toews Decl. ¶ 5.  Plaintiffs later returned to the

courthouse with their parents.  There, they were again "interrogated about home, family, and

school," before being "whisked . . . out a back entrance into a waiting car" and told that they

were being placed in foster care "because [their] parents were refusing to cooperate with the

judge."  Am. Compl. ¶ 12.  The following day, Plaintiffs were taken to the Catholic Children's

Charities agency, before spending the next 10 days being "shifted between two foster care family

homes."  *Id.*  ¶¶ 13–14.  According to Plaintiffs, during the time spent at these homes, they were

not allowed to have contact with their parents, received no educational instruction, and were

subject to "negligent and indifferent care and treatment."  *Id.*  ¶¶ 14–15.

Plaintiffs were returned to their parents 11 days after removal.  *Id.* ¶ 16.  They allege that

their foster care experience left them in need of medical and psychiatric attention "for months

afterwards," and that they continue to require counseling.  *Id.*  According to Plaintiffs, Judge

McLeod ordered Plaintiffs' parents to re-enroll them in their former school, where they faced

"insults, bullying, and physical injury."  *Id.* ¶ 17.  Plaintiffs also claim that following their return

to their parents, they "were subjected to an unjustified monitoring of [their] home and school

circumstances for the next 2 years" by Jackson.  Dkt. 27 ("Pl. Opp. Br.") at 2.

**B.     Later Family Court Proceedings**

On January 23, 2004, Plaintiffs' parents filed a motion in Bronx County Family Court to

dismiss the December 20 petitions.  Dkt. 10 ("Sanders Aff.") Ex. B.  On March 11, 2004, Judge

Gayle Roberts denied the motion to dismiss the petitions, finding that "the petition states a valid cause of action."  *Id.*  Plaintiffs' parents appealed this denial to the Appellate Division, First Department.  On December 16, 2004, the First Department unanimously affirmed Judge Roberts' denial of the motion to dismiss.  Sanders Aff. Ex. C.

On June 28, 2005, the educational neglect proceedings in Family Court came to a "fact-finding hearing by inquest," due to the failure of Plaintiffs' parents to appear before the court. Sanders Aff. Ex. D.  Judge Clark Richardson found by a preponderance of the evidence that Plaintiffs' parents had committed educational neglect and ordered that Plaintiffs be released to their parents' custody, with ACS supervision for six months to ensure their cooperation with referrals made by ACS and the Department of Education.  *Id.*

C.      **The Prior State Court Action**

In or about 2005, Roslyn and Frederick filed a petition in the Supreme Court of New York, Bronx County, seeking dismissal of the educational neglect proceeding then pending in Family Court.  Sanders Aff. Ex. F.  On April 5, 2005, Judge Dianne Renwick denied the petition, holding that because Plaintiffs' parents had "failed to obtain relief at the Court of Appeals, [they] cannot attack the Appellate Division's ruling by commencing an Article 78 proceeding in Supreme Court."  *Id.*  Furthermore, the court declined to remove the Family Court proceedings to the Supreme Court of New York, on the ground that "the Family Court is equipped to handle such a dispute."  *Id.*  On May 31, 2005, Plaintiffs' parents filed a motion requesting leave to renew and reargue their petition for dismissal of the educational neglect proceeding, and an

4

unspecified preliminary injunction.  Sanders Aff. Ex. G.  On July 1, 2005, that request was denied.  *Id.*

      **D.**      **Prior Federal Court Actions**

      On July 7, 2003, Roslyn and Frederick filed an action in the Supreme Court of New York, Bronx County against a number of the defendants in this case, including ACS, Jackson, and Light, among others, alleging criminally negligent torts and constitutional violations. Sanders Aff. ¶ 9; Sanders Aff. Ex. E.  On August 11, 2003, that action was removed to a court in this District.  *See Koger v. N.Y.C. Bd. of Educ., et al.*, No. 03 Civ. 6079 (SAS) (S.D.N.Y.), Dkt. 1.  On February 18, 2004, the case was voluntarily dismissed.  *See id.* Dkt. 10, 11.  On September 5, 2007, Roslyn and Frederick moved for leave to restore and reargue the case; on September 11, 2007, the Hon. Shira A. Scheindlin denied that motion.  *Id.* Dkt. 13.

      On January 8, 2008, Frederick filed a separate complaint in this District pursuant to § 1983, against the defendants in the present action, as well as several public school employees, "Board of Education" officials, and the New York City Police Department.  *Koger v. N.Y.C. Bd. of Educ., et al.*, No. 08 Civ. 2101 (KMW) (S.D.N.Y.), Dkt. 2.  The complaint alleged a conspiracy to violate his family's constitutional and civil rights, and sought $50 million in damages and the termination of all defendants from their positions.  *Id.*  On March 3, 2008, then-Chief Judge Kimba M. Wood dismissed the complaint on several grounds.  *See id.* Dkt. 3; Sanders Aff. Ex. E ("2008 KMW Op.").  First, the court held that the Bronx County Family Court and the Family Court judges were immune from suit.  *See* 2008 KMW Op. at 3 (citations omitted).  With respect to the claims against the court-appointed and Legal Aid attorneys and the City of New York, the court held that the complaint failed to state a cognizable § 1983 claim, as the court-appointed and Legal Aid attorneys were not state actors subject to suit under the

statute, and Frederick did not plead facts alleging that his injury was caused by a policy or custom of the City of New York, as is required to state a § 1983 claim against a municipality. *Id.* at 4–6. The court also noted that many of the claims appeared time-barred. *Id.* at 7.

On May 23, 2008, Frederick filed a motion to vacate the order and judgment of the court dismissing his complaint. *Koger v. N.Y.C. Bd. of Educ., et al.*, No. 08 Civ. 2101, Dkt. 5. On July 25, 2008, the court denied the motion, and noted that Frederick "will not be allowed to file anything further in captioned manner with the exception of documents directed to the [Second Circuit]," and that "appeal from this order would not be taken in good faith." *Id.*, Dkt. 6.

### E.    Procedural History of the Instant Case

Plaintiffs filed their initial complaint in this case on November 8, 2013. Dkt. 1. On February 21, 2014, the City of New York, ACS, Jackson, the New York City Corporation Counsel, Lelani Hines ("Hines"), and Jennifer Levine ("Levine") (the "City defendants") filed an Answer, and on the same day the State of New York, the Bronx County Family Court, and the Family Court Judges (the "State defendants") filed a motion to dismiss, along with a supporting memorandum of law. Dkt. 8–12. On February 24, 2014, the Court issued an order directing Plaintiffs to file an amended complaint, or if they did not wish to do so, to file their opposition to the motion to dismiss, no later than April 4, 2014. Dkt. 14.

On April 2, 2014, Plaintiffs filed an Amended Complaint. Dkt. 15. In it, Plaintiffs bring claims under § 1983, alleging violations of their constitutional and civil rights, as well as several state-law claims, including "negligence, intentional infliction of emotional distress, loss of consortium, unlawful detention, fraud, negligent supervision, civil conspiracy, and the failure to

provide adequate education to minors while being unlawfully detained." [3] *Id.* at 1.[4]  Plaintiffs

seek equitable relief, and damages amounting to $70,000,000.  *Id.* at 12.

On April 22, 2014, the State defendants filed a motion to dismiss the Amended

Complaint, Dkt. 16, as well as a supporting memorandum of law, Dkt. 18 ("State Defs. Br.").

On April 23, 2014, the City defendants filed a motion to dismiss the Amended Complaint, Dkt.

20, as well as a supporting memorandum of law, Dkt. 21 ("City Defs. Br.").  On May 30, 2014,

Plaintiffs filed their opposition.  Dkt. 27.  On June 5, 2014, the State defendants filed a reply

memorandum of law, Dkt. 28; on June 6, 2014, the City defendants did the same, Dkt. 29.

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly

dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  Accordingly, a district court

must accept as true all well-pleaded factual allegations in the complaint, and draw all inferences

in the plaintiff's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

---

[3] In light of district courts' obligation "to construe *pro se* complaint[s] liberally," *Harris v. Mills*,
572 F.3d 66, 72 (2d Cir. 2009), the Court reads Plaintiffs' claims of violations of their rights by
defendants acting under color of state law as raising claims pursuant to § 1983, even where the
Amended Complaint does not state them as such.

[4] Because Plaintiffs include paragraph numbers for only a portion of the Amended Complaint,
the Court cites to page numbers as necessary.

2007).  However, that tenet "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

District courts are "obligated to construe *pro se* complaint[s] liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), interpreting them "to raise the strongest arguments that they suggest," *Triestman v. F. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  Courts may not, however, read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (citation omitted), or arguments that the submissions themselves do not "suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).  *Pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Traguth v.  Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

## III.     Discussion[5]

### A.     Timeliness of the § 1983 Claims

Although the parties do not address this issue in their briefs, Plaintiffs' § 1983 claims face timeliness hurdles.

In § 1983 actions, the applicable limitations period is the "general or residual state statute of limitations."  *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (internal quotation

---

[5] Defendants argue that Plaintiffs' claims are barred by the doctrine of *res judicata*, because Frederick's 2008 complaint, which raised substantially the same issues as the Amended Complaint here, was dismissed on the merits.  City Defs. Br. at 8; State Defs. Br. at 15.  Frederick's complaint, however, was filed *in forma pauperis*, and was dismissed under 28 U.S.C. § 1915(e).  2008 KMW Op. at 3.  The Supreme Court has held that dismissal under § 1915(e) "is not a dismissal on the merits, but rather an exercise of the court's discretion under the *in forma pauperis* statute."  *Denton v.  Hernandez*, 504 U.S. 25, 34 (1992).  Accordingly, dismissal on those grounds "does not prejudice the filing of a paid complaint making the same allegations."  *Id.*  Here, Plaintiffs filed a paid, albeit *pro se*, complaint.  Thus, the present action is not blocked by the dismissal of Fredrick's *in forma pauperis* complaint, even though it made substantially the

8

marks and alterations omitted).  For a § 1983 claim arising in New York, the statute of

limitations is three years.  *See Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 328 (2d

Cir. 2011); *Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004).  Federal law,

however, determines when a § 1983 cause of action accrues.  *See Pearl*, 296 F.3d at 80.

"[A]ccrual occurs 'when the plaintiff knows or has reason to know of the injury which is the

basis of his action.'"  *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.

1980)).

      In addition to borrowing the applicable state statute of limitations in § 1983 actions,

federal courts borrow the applicable state tolling provisions as well.  *Thomas v. New York City*,

814 F. Supp. 1139, 1153 (E.D.N.Y. 1993) (citing *Bd. of Regents of Univ. of State of N.Y. v.

Tomanio*, 446 U.S. 478 (1980)).  Under New York law, the statute of limitations is tolled when

the plaintiff, at the time of the cause of action, is under age 18.  N.Y. CPLR 105, 208

(McKinney).  When the applicable statute of limitations is three years or more, the time within

which the action must be commenced is extended to three years after the plaintiff reaches age 18.

*See id.*

      All of the conduct described in the Amended Complaint occurred between December 20,

2002 (the date of the initial educational neglect proceedings) and sometime in 2005 (when the

alleged harassment by Defendants purportedly ceased).  Plaintiffs were both under age 18 when

the alleged conduct occurred, *See* Am. Compl. Ex. A; thus, the statute of limitations was tolled

until Plaintiffs reached age 18, and the time to file their § 1983 claims extended to three years

from that point.  For Amanda, who turned 18 on August 29, 2010, the statute of limitations

---

same allegations.  Nevertheless, much of the reasoning underlying the dismissal of Frederick's
complaint requires dismissal of Plaintiffs' claims here.

expired on August 29, 2013.  The Complaint in this action was not filed until November 8, 2013.
Accordingly, Amanda's § 1983 claims are time-barred.  For Megan, who turned 18 on August
15, 2013, the statute of limitations does not expire until August 15, 2016.  Accordingly, Megan's
§ 1983 claims are timely.[6]

B.   **Section 1983 Claims against the Family Court**[7] **and Family Court Judges**

The Amended Complaint alleges that the Judges of the Bronx Family Court violated
Plaintiffs' constitutional rights in various ways in connection with the December 20 educational
neglect petitions.

First, the Amended Complaint alleges Fourth and Fifth Amendment violations on the part
of Family Court Judge McLeod, relating to the transportation of Plaintiffs to the Bronx County
Family Court in a police car, the questioning of Plaintiffs regarding their home life and
education, and the placement of Plaintiffs in foster care for several days.  *See* Am. Compl. at 8–
9.  Specifically, the Amended Complaint alleges, *inter alia*, (1) an unreasonable search and
seizure, deprivation of "the right to be free and educated" through acts that "violate and pervert
the course of justice," and "unlawful detention of minors when no actual imminent danger was
present," in violation of the Fourth Amendment; (2) a deprivation of Plaintiffs' civil liberties and
"right to not be questioned without representation as minors," in violation of the Fifth

---

[6] Because Amanda and Megan's claims are identical, the reasons for dismissing Megan's claims
on the merits, discussed *infra*, would apply equally to Amanda's claims, were Amanda's claims
timely filed.  Accordingly, for the purposes of ruling on the Amended Complaint's § 1983
claims, the Court treats Amanda's claims as not time-barred, and addresses Plaintiffs' claims
together.

[7] The Amended Complaint lists several defendants in the caption, while making no specific
allegations against these defendants in the body of the pleading.  Construing the Amended
Complaint liberally, in accordance with *Harris*, the Court reads Plaintiffs' claims relating to the
individual defendants to be against the entities with which the individual named defendants are
affiliated, as well as the against the individual defendants themselves.

Amendment; and (3) the use of jurisdictionally "defective" petitions, also purportedly in violation of the Fifth Amendment. *Id.*

The Amended Complaint also alleges that Family Court Judge Richardson abused his discretion by "leaving [Plaintiffs] in foster care and setting the case for 'trial' without facts to support the placement," as well as through his ultimate finding of educational neglect. *Id.* at 9. Plaintiffs further allege that Family Court Judge Roberts demonstrated "deliberate indifference" and ordered "continuous home monitoring" after Plaintiffs were returned to their parents, in violation of Plaintiffs' civil rights. *Id.* at 10.

Plaintiffs' § 1983 claims against the Family Court itself must be dismissed. As an agency of the state of New York, "New York state courts are immune from suit under the Eleventh Amendment." *Goldberg v. Roth*, 99 Civ. 11591 (KTD), 2001 WL 1622201, *4 (S.D.N.Y. Dec. 17, 2001) (citations omitted). Moreover, § 1983 protects against deprivations of one's federally-protected rights by any "person" acting under color of state law. 42 U.S.C. § 1983. A court is not a "person" within the meaning of § 1983. *Zuckerman v. Appellate Div., Second Dep't, Sup. Ct. of State of N. Y.*, 421 F.2d 625, 626 (2d Cir. 1970). Thus, Plaintiffs do not state § 1983 claims against the Family Court upon which relief may be granted.

Plaintiffs' claims against Family Court Judges McLeod, Roberts, and Richardson must also be dismissed on grounds of judicial immunity. Generally, "a judge acting within his or her judicial powers is immune from suit." *Goldberg*, 2001 WL 1622201, at *4. This immunity does not attach, however, for (1) "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity"; and (2) "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (citations omitted). The factors relevant in determining whether conduct is "judicial" in nature are (1) "whether it is a function

11

normally performed by the judge"; and (2) whether the parties "dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

The allegations in the Amended Complaint against the Family Court judges consist of "judicial actions," for which judicial immunity attaches.  Educational neglect proceedings, and temporary placement of children in foster care when the court determines it is necessary, are clearly judicial functions of the Family Court.  *See* N.Y. Const. art. VI, § 13, N.Y. Fam. Ct. Act § 1027 (McKinney).  These are some of the court's core functions.  Plaintiffs dealt with the Family Court judges solely in the context of educational neglect proceedings; therefore, the actions of the Family Court judges were taken in their judicial capacity.  In attempting to resist this conclusion, Plaintiffs argue that "[t]aking [them] from [their] home and family was an act of personal prejudice," Pl. Opp. Br. at 2, and that "there seemed to be a push to put [them] in foster care," Pl. Opp. Br. at 7.  But judicial immunity "is not overcome by allegations of bad faith or malice." *Mireles*, 502 U.S. at 11.

Nor do Plaintiffs adequately allege a jurisdictional defect on the part of the Family Court sufficient to deprive the judges of judicial immunity.  Plaintiffs allege that the December 20 petitions were jurisdictionally defective because of the absence of a stamp from the Clerk of the Family Court on the petitions themselves, and that this failure deprived the court of jurisdiction for all proceedings that followed.  Am. Compl. at 9.  The record shows, however, that the Appellate Division unanimously affirmed the Family Court ruling that the petitions stated a valid cause of action.  Sanders Decl. Ex. C.  Plaintiffs' understanding of Family Court procedures notwithstanding, this state court finding provides persuasive evidence that the petitions were not

jurisdictionally defective in a manner that would taint the validity of the proceedings that followed.

The actions of the Family Court judges were taken in their judicial capacity, and not in the complete absence of jurisdiction. Accordingly, the judges are immune from suit. The claims against them must be dismissed.

### C.   Section 1983 Claims against Jennifer Levine and Lelani Hines

The Amended Complaint further alleges that Levine, an employee of the New York City Law Department and court-appointed counsel for ACS, "caused [Plaintiffs] injury and emotional distress," because she "did nothing to keep [Plaintiffs] from being placed in foster care, on defective petitions," and "failed to properly train, supervise, and advise the [ACS] caseworker on the correct manner in which to commence petitions, or how to collect evidence before having a court intervene in the life of a child." Am. Compl. at 4, 10. In addition, Plaintiffs allege that Hines, who assisted Levine in representing ACS, "had a duty and the power to prevent the Court from needlessly taking [Plaintiffs]," and "had reason to know of the defect on the petitions," but "[i]nstead she 'egged her charges on' in the deprivation of [Plaintiffs'] rights." *Id.* at 4, 11.

Levine and Hines, however, are immune from suit. State prosecutors enjoy absolute immunity from a § 1983 civil suit for damages for conduct "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). In addition, the Second Circuit has held that "officials performing certain functions analogous to those of a prosecutor," including attorneys initiating and presenting child protection cases in a family court, have "absolute immunity with respect to such acts." *Walden v. Wishengrad*, 745 F.2d 149, 151, 152 (2d Cir. 1984) (citing *Butz v. Economou*, 438 U.S. 478, 515–17 (1978)); *see also Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) (ACS lawyers involved in the removal of a child from the

13

custody of the child's parents perform functions similar to those of a prosecutor, and thus are entitled to absolute immunity).  As attorneys presenting educational neglect cases in Family Court, Levine and Hines are entitled to absolute immunity with respect to their performance of this quasi-prosecutorial function.  The claims against them are dismissed.

### D.    Section 1983 Claims against Legal Aid[8] and Vicki Light

Plaintiffs allege that Light, a Legal Aid law guardian appointed by Judge McLeod to represent Plaintiffs in the educational neglect case, "conspired and met secretly with Justice McLeod on multiple occasions, and later with Justice Roberts, suggesting [Plaintiffs] remain in foster care" and recommending psychological evaluation.  Am. Compl. at 4, 9.  Plaintiffs allege that this behavior, in connection with the procedural defects of the educational neglect petitions, amounts to a deprivation of their civil rights.  *Id.* at 9–10.

Actions under § 1983 require that the "conduct complained of [be] committed by a person acting under color of state law."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).  A private actor acts under color of state law for the purpose of a § 1983 claim when his or her actions are "fairly attributable to the state."  *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012).  Only where there is "a close nexus between the State and the challenged action" may "seemingly private behavior . . . be fairly treated as that of the state itself."  *Vega v. Fox*, 457 F. Supp. 2d 172, 181 (S.D.N.Y. 2006) (internal quotation marks omitted).  It is well established that defense attorneys, even if they are court-appointed, do not act under color of state law when performing traditional functions of counsel.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional

---

[8] The Amended Complaint lists Legal Aid in the caption, but does not make any specific allegations against the entity.  For the reasons discussed *supra* note 7, the Court treats the allegations against Light, a Legal Aid employee, as asserted against Legal Aid as well.

functions as counsel to a defendant in a criminal proceeding."); *see also Brown v. Legal Aid Soc'y*, 367 F. App'x 215, 216 (2d Cir. 2010); *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997).

Here, even taking the allegations in the Amended Complaint as true, the state action requirement has not been adequately pled.  Light, as court-appointed law guardian, was clearly performing traditional functions of counsel.  Plaintiffs' conclusory allegations fail to provide a sufficient factual basis to transform Light or Legal Aid into a state actor for the purposes of § 1983.  And, to the extent that Plaintiffs claim that Light, and by extension Legal Aid, conspired with other state officials, the Second Circuit has held that "'a merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against' a private party."  *Browdy v. Karpe*, 131 F. App'x 751, 753 (2d Cir. 2005) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)); *see also Brown*, 367 F. App'x at 216 ("To the extent [plaintiff] . . . alleg[es] that the public defenders in his case conspired with a state court judge to pursue his illegal prosecution, . . . this conspiracy allegation is wholly conclusory and, as such, insufficient even at the pleading stage to establish that the public defenders were acting under color of state law.").  Thus, the Amended Complaint fails to state a cognizable § 1983 claim against Light or Legal Aid.

### F.      Claims against the State of New York

Plaintiffs' claims, to the extent they implicate the State of New York, must be dismissed. The Eleventh Amendment bars from federal court all suits by private parties against a state unless the state consents to such a suit or Congress has validly abrogated its immunity.  *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–64 (2001); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984).  This immunity from suit applies to a state

regardless of the relief sought.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Halderman*, 465 U.S. at 101–02; *Ward v. Thomas*, 207 F.3d 114, 119–20 (2d Cir. 2000) (citing and quoting *Green v. Mansour*, 474 U.S. 64, 71–73 (1985)).

The State of New York has not consented to being sued in federal court, and Congress has not abrogated its immunity with respect to § 1983.  *See Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990); *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).  Therefore, Plaintiffs' claims against the State of New York, to the extent they are present in Plaintiffs' claims against the Bronx County Family Court, must be dismissed.

## G.    Municipal Liability Claims

Plaintiffs' claims, to the extent they implicate the City of New York must also be dismissed.[9]  To state a § 1983 claim against a municipality, a plaintiff must allege that an officially-adopted policy or custom caused his injury.  *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978); *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (plaintiff must demonstrate a "direct causal link between the

---

[9] Agencies of the City of New York are not suable entities.  *See* N.Y.C. Charter Ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."); *see also Jenkins v. N.Y.C. Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 510 (S.D.N.Y. 2009) ("[T]he overwhelming body of authority holds that [a city agency] is not a suable entity." (internal quotation marks and citation omitted)).  Accordingly, for the purposes of resolving this motion, the Court will substitute the City of New York for ACS and Corporation Counsel, which are city agencies.  *See, e.g., Ogunbayo v. Montego Med. Consulting P.C.*, No. 11 Civ. 4047 (NGG), 2012 WL 6621290, at *9 n.16 (E.D.N.Y. Sept. 18, 2012) ("ACS, as a New York City agency, may not be sued independently pursuant to Section 396 of the New York City Charter. . . . Should plaintiff's case be allowed to proceed, she should amend her Complaint to name the City of New York as a defendant."); *Renelique v. Doe*, No. 99 Civ. 10425 (LTS) (HBP), 2003 WL 23023771, *7 (S.D.N.Y. Dec. 29, 2003) (treating City, not agency, as defendant for purposes of resolving summary judgment motion).

16

municipal action and the deprivation of federal rights").  A single incident is "not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *cert. denied*, 520 U.S. 1117 (1997) (municipal liability cannot be "predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy").

The Amended Complaint conclusorily alleges that certain ACS employees were improperly trained or supervised, but fails to state any facts whatsoever alleging that an officially adopted policy or custom of the City of New York was the cause of their injury.  Nor do any of the claims against individual defendants allege a policy or custom of this sort.  Therefore, Plaintiffs' claims against the municipal defendants must be dismissed.

### G.      Remaining State Law Claims

Having dismissed Plaintiffs' federal law claims, the Court must determine whether to exercise supplemental jurisdiction over Plaintiffs' remaining claims, all of which are brought under New York state law.[10]

Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

---

[10] The remaining claims involve alleged violations of the New York State Family Court Act by ACS caseworker Jackson, as well as claims appearing to sound in state-law negligence, intentional infliction of emotional distress, loss of consortium, unlawful detention, fraud, negligent supervision, and civil conspiracy.  *See* Am. Compl. at 1, 11.

However, such jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  A district court should, in deciding whether to exercise its supplemental jurisdiction, balance the traditional "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims." *Id.* (citing *Cohill*, 484 U.S. at 350 n.7).

Here, no circumstances counsel in favor of the Court's exercising supplemental jurisdiction over Plaintiffs' state law claims.  The Court has not invested the resources necessary to resolve these non-federal claims, nor do convenience, fairness, and comity require the Court to exercise supplemental jurisdiction.  The Court accordingly declines to exercise supplemental jurisdiction over these claims.  These claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Amended Complaint is granted.  The Clerk of Court is directed to terminate the motions at Dkt. 16 and 20, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: July 31, 2014
       New York, New York

18